**Harold Lee JONES, Appellee,**

v.

**SUPERINTENDENT, VIRGINIA STATE FARM, Appellant.**

No. 71–1808.

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1972.

Decided May 4, 1972.

Rehearing Denied Sept. 1, 1972.

Burnett Miller, III, Asst. Atty. Gen. of Virginia (Andrew P. Miller, Atty. Gen. of Virginia, on brief), for appellant.

William A. Reppy, Jr., Durham, N. C. (Court-appointed counsel), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

The Superintendent of the Virginia State Farm appeals the order of the district court which requires him to produce the entire record of the petitioner's criminal convictions and the entire record of any state collateral proceedings. He urges upon us that the state is not required to furnish transcripts of any state judicial proceeding to the petitioner unless a need for them is shown. We agree, and vacate the order of the district court insofar as it requires the Superintendent to produce such transcripts.

Jones' petition to the district court, denominated a Petition for a Peremptory Writ of Mandamus with Motion for Judgment, requested the district court to order the respondent to forward to

the petitioner all state court records relevant to his convictions in 1952 of robbery and felonious shooting. The petition was brought pursuant to 42 U.S.C. § 1983, and it is clear that Jones wanted all of his records in order to see if these records disclosed any grounds upon which he could collaterally attack his convictions.[1] The district court ordered the production of "the entire record of the state criminal cases in issue and the entire record of any state collateral litigation," specifically stating that these records were to include transcripts. By affidavit, the respondent claimed that there were no existing transcripts of the petitioner's trials in 1952 and there were "no notes from which the evidence may be reconstructed" but stated that there was a transcript of a 1968 state habeas corpus hearing in existence. Whether the petitioner has a constitutional right to examine this transcript, or to be furnished a copy thereof, is the question before us.

■ We think that the district court improvidently treated this petition as one for habeas corpus.[2] Traditional habeas relief was not sought, and it is clear that jurisdiction was properly invoked under 42 U.S.C. § 1983 to decide whether the petitioner has a constitutional right to a transcript and to award appropriate relief if he has such a right.[3] We interpret the order "requesting" the production of all records of petitioner's convictions and collateral proceedings as contemplating the transmission of any transcripts, or copies thereof, to the petitioner without further proceedings, and is therefore a final order appealable under 28 U.S.C. § 1291.

■ It is settled in this circuit that "an indigent is not entitled to a transcript at government expense without a showing of the need, merely to comb the record in the hope of discovering some flaw." United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963); accord, United States v. Shoaf, 341 F.2d 832 (4th Cir. 1964). It is equally clear that when a need for a transcript in order to collaterally attack a conviction is shown, equal protection and due process require the state to furnish an indigent prisoner such transcript without charge. Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892 (1963); United States v. Shoaf, supra. The respondent contends that, consistent with these principles,

1. The only portion of his petition which even arguably sets out a need for the transcript reads:

> How can the plaintiff set forth any valid specifit grounds sufficient to support his contenplated attack on the validity of his present detention, . . . unless the plaintiff can see his records, to prove plaintiffs only counter, being only plaintiff's mental recollection of incompetent and indirect advice given plaintiff at trial time, etc. [sic]

Even under our liberal construction given to pro se petitions, we think it stretches words too far to call this an affirmative allegation of a denial of any constitutional right.

2. Apparently the district court reasoned that if the case were characterized as habeas then the order requiring production of transcripts might be conceptually analo-

gized to discovery. We think the result should not turn on labeling.

3. Were injunctive relief ordering the state to give the petitioner a copy of the transcript appropriate, such relief would not amount to unwarranted interference in state court prosecutions or litigation, as feared by the district court, citing Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), and Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), but would compel state officials to correct unconstitutional conditions of detention, for which injunctive relief under 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343 (3) and (4), is an appropriate remedy. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). See N.A.A.C.P. v. Thompson, 357 F.2d 831 (5th Cir. 1966); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969).

the state may constitutionally decline to furnish an indigent with a transcript until a need for it is shown, even though the transcript is already in existence. We agree.

Although a transcript of the trial was erroneously prepared and available by the time United States v. Shoaf was decided on appeal, this court's decision was based on the nonexistence of the transcript at the time the district court made its ruling. The only distinction between Shoaf and this case is that the transcript here existed at the time the district court ruled, and therefore the expense and inconvenience to the state in supplying a transcript for the prisoner would have been minimal.

■■ We hold the right to a transcript when needed to collaterally attack a conviction does not depend upon a balancing of the expense and administrative inconvenience to the state against the interest of a defendant in securing a trial free from constitutional error. The right is absolute, irrespective of expense or inconvenience to the state. Conversely, if no need is shown, there is no constitutional right to a transcript, regardless of how easily and inexpensively the state could furnish it.[4]

Since Virginia may constitutionally refuse to furnish petitioner with an existing transcript until a need is shown for it, the order of the district court, insofar as it requires production of the transcript of the 1968 state habeas corpus hearing, is

Reversed.

4. Thus far the Supreme Court has specifically declined to decide this question. Wade v. Wilson, 396 U.S. 282, 286, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). We are aware of the moral, if not constitutional, problem inherent in a system of court reporting normally paid for, in part at least, by litigants and the disparity of monetary ability to buy an expensive transcript. The problem goes beyond fairness and monetary considerations and seriously involves the efficient functioning of the courts. It has been noted time and again that the delay in deciding appeals

is often attributable to delay in getting a transcript. We think the entire difficult problem of how to mechanically report trials and how to mechanically prepare sufficient records for appeal expeditiously and economically is beyond the province of the courts to decide and implement in our necessarily ad hoc case-by-case method. In the long run, probably congressional action is the only solution. *See generally*, National Bureau of Standards, A Study of Court Reporting Systems, Volume I, Decision Factors.